2000 OK 36

**Joyce Kathleen COPELAND and Patrick Copeland, Appellants,**

v.

**The LODGE ENTERPRISES, INC., an Oklahoma Corporation, and Sharon Andrews, Appellees.**

No. 92785.

Supreme Court of Oklahoma.

May 9, 2000.

Steven R. Hickman, Frasier, Frasier & Hickman, Tulsa, Oklahoma, for Appellants.

Gregory D. Nellis, Galen L. Brittingham, and Margaret A. Nunnery, Atkinson, Haskins, Nellis, Boudreaux, Holeman, Phipps & Brittingham, Tulsa, Oklahoma, for Appellees.

OPALA, J.

¶1 The dispositive issue on certiorari is whether the trial court erroneously entered summary judgment for defendants. We answer in the affirmative.

I

## ANATOMY OF LITIGATION

¶2 In November of 1992, Joyce Kathleen Copeland ("Copeland") was working as a pharmaceutical sales representative. While on a business trip, she spent the night as a paying guest at the Days Inn Motel in Muskogee, Oklahoma, a roadside hotel owned by The Lodge Enterprises, Inc. and operated by Sharon Andrews ("defendants"). Sometime during the night, she was allegedly bitten by a brown recluse spider. A search of Copeland's room several days later failed to turn up the offending arachnid. Copeland alleged the spider bite caused her to suffer severe, permanent, and disfiguring injuries.

¶3 Copeland originally sought recompense for her injuries in Workers Compensation Court, but her claim was denied. On appeal, the Court of Civil Appeals affirmed the ruling, holding that Copeland's injury did not arise out of her employment.[1] While the workers compensation claim was pending, Copeland and her husband, Patrick (jointly "plaintiffs") brought this action in the District Court, Muskogee County, alleging that the defendants were grossly negligent in failing to provide Copeland with a safe premises, free of "varmints, critters and harmful insects," or in the alternative, to warn of their presence.[2] Copeland sought damages for her injuries, and her husband for loss of services, society, companionship and consortium.

¶4 Defendants moved for summary judgment, in which they argued that (1) they had fulfilled their duty of care—owed to invitees—to maintain the premises in a reasonably safe and suitable condition, (2) their duty of care did not encompass protecting Copeland from injury from the bite of a brown recluse spider because the particular risk of harm from the presence of a brown recluse spider was not foreseeable; (3) they were not the insurers of the safety of motel guests; and (4) their conduct did not create or worsen any risk of harm, but rather prevented or lessened any such risk.

¶5 In support of their motion, defendants submitted copies of monthly invoices from Admiral Pest Control Co. ("Admiral") showing a continuous program of pest control services at the Days Inn from August 1989 through February 1993, including the time period in which Copeland suffered her injury here in suit.[3] Defendants also tendered portions of Sharon Andrews' deposition. Andrews, who was the Days Inn manager at the

---

1. *Copeland v. Boots Pharmaceuticals,* 1996 OK CIV APP 8, 916 P.2d 277.

2. Plaintiffs brought a separate action later that year in the District Court, Muskogee County, Lyle Burris, trial judge, against Admiral Pest Control Co., the extermination company that performed pest control services at the motel. Also named as defendants in that action were Lodging Enterprises, Inc., a Kansas corporation, and Green Country Inn of Merrian, a limited partnership. The relationship between the latter two defendants and the corporate defendant in this cause is unclear from the record, as is the reason for the separate lawsuits inasmuch as both suits arose out of the same incident. Nevertheless, in the separate action, Admiral was granted summary relief. Plaintiff and her husband appealed. The Court of Civil Appeals, Div. I, affirmed, holding that the facts supported neither an *ex contractu* nor an *ex delicto* claim against the pest control provider. With regard to the negligence claim, the appellate court pointed out that Admiral owed no greater duty to third persons than it owed to the motel and *in the absence of any evidence that Admiral performed the contract negligently or guaranteed that the motel would be pest-free,* Admiral could not be held liable for the presence of the offending spider. *Copeland v. Admiral Pest Control Co.,* 1996 OK CIV APP 119, 933 P.2d 937, *reh'g denied* (Nov. 5, 1996); *cert. denied* (Jan. 29, 1997).

3. The record contains invoices which run in continuous sequence through February, 1993, after which several months are missing. They resume in continuous succession in 1994.

time of Copeland's injury, testified that she was trained in motel management, including pest control, she had engaged Admiral to spray the motel premises for insects and other pests, she had given Admiral oral instructions that all pests were to be eliminated from the property, she sometimes personally watched as the pest control chemical was applied, she had terminated the services of the previous extermination company because it had failed to eradicate a roach infestation, she had never had to call Admiral because of a problem with any type of spider, and she had never received any complaints from customers other than Copeland about the presence of spiders. Andrews also testified in her deposition that on Monday or Tuesday morning after Copeland's incident the previous Wednesday, she and Admiral's exterminator searched for spiders in the room in which Copeland had stayed as well as several other rooms. Although no spiders were found, they nonetheless sprayed the rooms. According to her deposition, the Days Inn received two or three annual, unannounced inspections by the Oklahoma Department of Health and had not been cited for any deficiencies during her tenure as manager.[4]

¶ 6 In response, plaintiffs offered an affidavit from a (self-described) licensed, experienced exterminator, who stated that (1) brown recluse spiders are common and indigenous to eastern Oklahoma and (2) if reasonable care were exercised in the pest control treatment of a facility, brown recluse spiders would be eradicated. They also tendered a letter of apology from defendant Andrews, *acknowledging that Oklahoma is known for*

*spiders.* Finally, plaintiffs offered copies of certain rules of the Oklahoma State Department of Health pertaining to lodging establishments, which condition licensure to operate a motel on compliance with the state's health and safety regulations.[5] Among these regulations is one requiring "effective methods of vermin control."[6]

¶ 7 On this record, the trial court entered summary judgment for the defendants, and plaintiffs appealed. The Court of Civil Appeals, Div. III, affirmed, holding that plaintiffs' tendered evidentiary material only "addressed the standard for exterminators, but did not speak to the standard of care of the innkeepers in devising an extermination program, or the knowledge of Lodge Enterprises." Hence, plaintiffs, having failed to tender "something" tending to prove that *defendants* breached *their* duty of care, left undisputed the latter's tendered proof that the motel had met its duty of care to keep the premises in a reasonably safe and suitable condition. Plaintiffs sought and were granted certiorari. *We now reverse.*

## II

### STANDARD OF REVIEW

¶ 8 Summary process—a special pretrial procedural track pursued with the aid of acceptable probative substitutes[7]—is a search for undisputed material facts which, *sans* forensic combat, may be utilized in the judicial decision-making process.[8] To that end, the court may consider, in addition to the pleadings, items such as depositions, affidavits, admissions, answers to interrogato-

---

4. The record also contains a copy of defendants' brief at nisi prius in support of their motion for summary judgment. The brief *identifies* as exhibits the affidavits of two other Muskogee innkeepers stating that the Days Inn's extermination policies and procedures were appropriate for the motel industry and were identical to the way in which extermination was handled at their Muskogee motels. *Neither affidavit is in fact attached to the copy of the brief* provided in the record on appeal, nor do they appear anywhere else in the record. *These affidavits are not dispositive of this claim, and we merely note here their absence from the record.*

5. The Lodging Establishment Regulations, compiled at 6 OAC, 1996 § 310:285—1 et seq., implement the single statute contained in Article 12 of the Public Health Code, 63 O.S.1991, § 1–1201.

Compliance with the regulations is a condition for receiving or retaining a license to operate a lodging establishment.

6. *Id.* at Rule 310:285 –3–9

7. " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Jackson v. Oklahoma Memorial Hosp.*, 1995 OK 112, ¶ 15 n. 35, 909 P.2d 765, 773 n. 35; *Seitsinger v. Dockum Pontiac Inc.*, 1995 OK 29, ¶ 18, 894 P.2d 1077, 1080–81; *Davis v. Leitner*, 1989 OK 146, ¶ 15, 782 P.2d 924, 926–927.

8. The focus in summary process is not on the facts which might be proven at trial (i.e., the legal sufficiency of evidence that could be adduced), but rather on whether the tendered proof

ries, as well as other evidentiary materials, which are offered by the parties in acceptable form.[9] Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim or defense afford legitimate support for nisi prius resort to summary adjudication.[10] Summary relief issues stand before us for de novo examination.[11] All facts and inferences must be viewed in the light most favorable to the nonmovant.[12] Just as nisi prius courts are called upon to do, so, too, the appellate tribunals bear an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant.[13] Only if the court should conclude that there is no material fact in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary judgment in its favor.[14]

## III

### THE NISI PRIUS SUMMARY JUDGMENT UNDER REVIEW IS ERRONEOUS

¶9 The question to be answered here is whether the evidentiary materials tendered by plaintiffs were sufficient to place disputed material (on the merits) facts in issue and hence to defeat defendants' motion for summary judgment. While the mere contention that material facts are in dispute is not sufficient to defeat a plea for summary judgment, neither is the nonmovant to be held to the standard of producing forensic evidence.[15] The nonmovant must merely "present something which shows that when the date of trial arrives, he will have some proof to support his allegations."[16] For an item of evidentiary material to be insufficient to defeat a motion for summary judgment, it must either facially lack probative value or be incapable of conversion at trial to admissible evidence.[17]

¶10 The affidavit of plaintiffs' licensed exterminator is not facially lacking in probative value, nor is it incapable of conversion at trial to admissible evidence. The elements of negligence are: (1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure properly to exercise or perform that duty, and (3) an injury to plaintiff proximately caused by the defendant's

in the record reveals only undisputed material facts supporting but a single inference that favors the movant's quest for relief. *Hulsey v. Mid-America Preferred Ins. Co.*, 1989 OK 107, ¶8, n. 15, 777 P.2d 932, 936 n. 15.

9. *Polymer Fabricating, Inc. v. Employers Workers Compensation Ass'n.*, 1998 OK 113, ¶8, 980 P.2d 109, 113.

10. *Russell v. Bd. of County Comm'rs*, 1997 OK 80, ¶7, 952 P.2d 492, 497; *Gray v. Holman*, 1995 OK 118, ¶11, 909 P.2d 776, 781.

11. An order that grants summary relief, in whole or in part, disposes solely of law questions. It is hence reviewable by a de novo standard. *Brown v. Nicholson*, 1997 OK 32, ¶5, 935 P.2d 319, 321. *See also, Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶14, 859 P.2d 1081, 1083 ("Issues of law are reviewable by a de novo standard and an appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings.").

12. *Carmichael v. Beller*, 1996 OK 48, ¶2, 914 P.2d 1051, 1053.

13. *See, Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, ¶10, 743 P.2d 682, 685 (approved for publication by the Supreme Court).

14. It is not the purpose of summary process to substitute a trial by affidavit for one by jury, but rather to afford a method of summarily terminating a case (or eliminating from trial some of its issues) when only questions of law remain. *Russell, supra*, note at ¶7, at 503; *Bowers v. Wimberly*, 1997 OK 24, ¶18, 933 P.2d 312, 316; *Stuckey v. Young Exploration Co.*, 1978 OK 128, ¶15, 586 P.2d 726, 730.

15. *Davis v. Leitner*, 1989 OK 146, ¶13, 782 P.2d 924, 926 ("The [evidentiary] materials attached to a response to a motion for summary judgment are not to be held to the standard of competent, admissible evidence.").

16. *Id.* ("It is enough that these 'other materials' reasonably show the judge who is considering the motion that the party opposing the motion will be able at the time of trial to present competent, admissible evidence to support the allegations."); *Weeks v. Wedgewood Village, Inc.*, 1976 OK 72, ¶12, 554 P.2d 780, 784.

17. *Seitsinger v. Dockum Pontiac Inc.*, 1995 OK 29, ¶16, 894 P.2d 1077, 1081.

breach of that duty.[18] Plaintiffs' licensed exterminator's affidavit speaks to the elements of duty and breach of duty by raising an issue of material fact as to *the liability of defendants for the alleged negligence of the their extermination contractor. This provides a sufficient evidentiary basis to defeat defendants' quest for summary judgment.*

¶ 11 An innkeeper in Oklahoma continues to have a status-based, common-law duty of care to a guest.[19] This duty remains unaltered by inspection and licensing statutes enacted under the police power of the state.[20] The owner or operator of a motel is not an insurer of his guests' personal safety.[21] Often described as a duty to maintain the premises in a reasonably safe and suitable condition,[22] the innkeeper's common-law responsibility applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like—things which are not readily observable.[23]

The duty is fulfilled when reasonable care is taken to prevent the invitee's exposure to dangers which are more or less hidden, not obvious.[24]

¶ 12 Although a hirer ordinarily cannot be held liable for the negligence of an independent contractor, the rule of non-liability does not apply where the hirer contracts for the performance of a duty imposed by law.[25] Hence, while an innkeeper may hire an independent contractor to perform the former's nondelegable duty, he (or she) may not pass off to an independent contractor the ultimate legal responsibility for the proper performance of that duty.[26] Under the nondelegable duty rule, an innkeeper may be held vicariously liable for an independent contractor's failure to exercise reasonable care *even if the innkeeper has himself exercised due care.*[27]

¶ 13 The duty of an innkeeper to provide a reasonably safe premises encom-

**18.** *Akin v. Missouri Pacific RR Co.*, 1998 OK 102, ¶ 36, 977 P.2d 1040, 1054; *Jackson v. Jones*, 1995 OK 131, ¶ 5, 907 P.2d 1067, 1071–1072.

**19.** *Buck v. Del City Apartments, Inc.*, 1967 OK 81, ¶ 13, 431 P.2d 360, 364.

**20.** *Id.; Ford v. Burden*, 1954 OK 240, ¶ 10, 276 P.2d 925, 927. *See also, Criswell v. Bankers' Mortgage Co.*, 128 Kan. 609, 278 P. 722 (1929). The common law remains in full force and effect unless a statute explicitly provides to the contrary. *Tate v. Browning–Ferris, Inc.*, 1992 OK 72, ¶ 11, 833 P.2d 1218, 1225. *See also* the relevant text of 12 O.S.1991 § 2. Nothing in the statute or regulations governing lodging establishments reflects a legislative intent to abrogate the common-law duty of care applicable to an innkeeper. *Accord, Weatherall v. Yorktown Homeowners Ass'n., Inc.*, 1993 OK CIV APP 59, ¶ 3, 852 P.2d 815, 816 (common-law duty of care applies to residential landlord despite statute requiring landlord to "keep all common areas of his building, grounds, facilities and appurtenances in a clean, safe and sanitary condition.").

**21.** *Sullins v. Mills*, 1964 OK 187, ¶ 12, 395 P.2d 787, 789.

**22.** *Buck, supra,* note 19 at ¶ 13, at 364; *Sullins v. Mills*, 1964 OK 187, ¶ 12, 395 P.2d 787, 789.

**23.** *Brown v. Alliance Real Estate Group*, 1999 OK 7, ¶ 3, 976 P.2d 1043, 1044.

**24.** *Id.*

**25.** "The rule in Oklahoma is that a person who performs work through an independent contractor is not liable for damages to third persons caused by the negligence of the contractor *except where the work is inherently dangerous or unlawful or where the employer owes a contractual or defined legal duty to the injured party in the performance of the work.*" (emphasis added) *Williamson v. Fowler Toyota, Inc.*, 1998 OK 14, ¶ 7, 956 P.2d 858, 860, quoting from *Hudgens v. Cook Industries, Inc.*, 1973 OK 145, ¶ 11, 521 P.2d 813, 815. *See also, Huckins Hotel Co. v. Clampitt*, 1924 OK 142, 101 Okla. 190, 224 P. 945, 946–47; *Minnetonka Oil Co. v. Haviland*, 1916 OK 103, 155 P. 217, 219; W. PAGE KEETON ET AL, PROSSER AND KEETON ON THE LAW OF TORTS § 71, at 511–512 (5th ed.1984).

**26.** *Great American Indemnity Co. v. Deatherage*, 1935 OK 1156, 175 Okla. 28, 52 P.2d 827, 830–31 ("... [T]he general rule of non-liability of the contractee is that one on whom the law imposes a positive duty to the public or an individual *cannot escape the responsibility of seeing that duty performed by delegating it to an independent contractor*, and will be liable for injuries resulting from the contractor's negligence in the performance thereof." emphasis added); *U.S. Security Services Corp. v. Ramada Inn, Inc.*, 665 So.2d 268, 270 (Fla.App.1995).

**27.** W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 71, at 511(5th ed.1984) ("... the cases of nondelegable duty ... hold the employer liable for the negligence of the contractor, although he has himself done everything that could reasonably be required of him. They are thus cases of vicarious liability.").

passes the duty to use effective measures of pest control. A "defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous."[28] The improper or ineffective application of pest control agents creates a foreseeable risk of harm to motel guests from the presence of what may otherwise be eradicable pests. At a minimum, insects, arachnids, and other undesirable creatures in a motel room pose an annoyance; at worst, as here alleged, they can pose a hidden, unexpected danger to unsuspecting motel guests. Cases cited by defendants for the proposition that innkeepers have no duty to guests to prevent injury from insects and other eradicable pests are either distinguishable or unpersuasive.[29]

¶ 14 Because the innkeeper's duty of care to invitees is nondelegable, the duty to use effective measures of pest control encompasses not only the motel's own actions or omissions, but also those of an independent contractor/exterminator with whom the motel contracts to perform the services.

¶ 15 The affidavit of the licensed exterminator offered by plaintiffs in the case under review raises a disputed fact issue as to whether the Days Inn's extermination contractor might have been negligent in the performance of the pest control services. Plaintiffs are entitled to a jury's consideration of this dispositive issue.

## IV

## SUMMARY

¶ 16 Where a genuine disputed issue of material fact (on the merits) exists, disposition of a cause by summary process is erroneous. The plaintiffs in the case here under review have presented evidentiary material sufficient to demonstrate a disputed fact issue, the resolution of which must be left to a jury.[30]

28. *Wofford v. Eastern State Hospital*, 1990 OK 77, ¶ 11, 795 P.2d 516, 519.

29. *E.g.*, in *Overstreet v. Gibson Prod. Co., Inc.*, 558 S.W.2d 58 (Tex.Civ.App. San Antonio 1977), a case cited by defendants, the court found no duty on the part of a retail store owner in Texas to protect a patron from the bite of a rattlesnake which had found its way into defendant's store. The court said that there was nothing in the record to suggest the defendant knew or had reason to know from past experience that there was a likelihood that snakes presented a danger to patrons of the store. We do not view the presence of a rattlesnake in a store as analogous to the presence of insects and other pests in a motel. While the presence of a rattlesnake in a store is a relative rarity, the presence of insects and other pests in a structure·which is either not subject to regular pest control applications or is subject to improperly performed pest control is quite common and readily anticipated. Defendants also cite the case of *Rhodes v. B.C. Moore & Sons, Inc.*, 153 Ga.App. 106, 264 S.E.2d 500 (1980), in which a store patron was stung by some sort of flying insect while shopping. The plaintiff alleged negligence by the store in allowing the insect to be present in the store and in failing to discover the presence of the insect. There was no allegation or tendered evidence, such as that offered in the case under review, that pest control procedures were negligently performed or that proper pest control could have prevented the insect from flying into the store. We also consider unpersuasive when applied to an innkeeper those cases cited by defendants where a court has declined to impose a duty on the owner of a private residence to protect invitees from insect bites. *See, e.g., Kay v. Kay*, 306 Ark. 322, 812 S.W.2d 685 (1991) and *Brunelle v. Signore*, 263 Cal.Rptr. 415, 215 Cal.App.3d 122 (4th Dist.1989). Finally, we reject the view adopted by the Arkansas Supreme Court in *Rodgers v. La Quinta Motor Inn*, 316 Ark. 644, 873 S.W.2d 551 (1994), that an innkeeper does not have a duty to use effective methods of pest control for the protection of its guests from harmful creatures in the absence of actual knowledge of the presence of the specific insect or of other pest which causes the harm. In this court's view, the presence of harmful insects or other pests can be anticipated where effective measures of pest control are not utilized. Moreover, plaintiffs in the present case have tendered evidentiary material to the effect that (a) infestation by indigenous brown recluse spiders is common in eastern Oklahoma and (b) proper pest control measures can eradicate such creatures. Hence, the defendant's negligent performance of those precautionary measures of pest control could give rise to liability if proximate cause is proved.

30. The opinion by the Court of Civil Appeals in *Copeland v. Admiral Pest Control Co.*, 1996 OK CIV APP 119, 933 P.2d 937, *reh'g denied (Nov. 5, 1996); cert. denied (Jan. 29, 1997)*, does not bar the plaintiffs in this case by issue preclusion from attempting to establish defendants' vicarious liability for the alleged negligence of the extermination company. As noted, *supra*, note 2, *there was no evidentiary material tendered in the earlier case that Admiral had been negligent. Hence, the earlier case did not settle the issue of Admiral's negligence.*

¶17 COURT OF CIVIL APPEALS' OPINION IS VACATED; JUDGMENT OF TRIAL COURT REVERSED.

¶18 SUMMERS, C.J., HARGRAVE, V.C.J., and LAVENDER, KAUGER, WATT, BOUDREAU, and WINCHESTER, JJ., concur.

¶19 HODGES, J., dissents.